# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW MEXICO

JOANN RUIZ,

      Plaintiff,

vs.                                Civ. No. 04-1050 JP/DJS

SEAN KENNY and JOSHUA R.
MCDONALD, in their individual
capacities,

      Defendants.

## MEMORANDUM OPINION AND ORDER

On July 26, 2005, Defendants Sean Kenny and Joshua R. McDonald filed a Motion for

Summary Judgment Requesting Dismissal of Counts I, II, III, and V of Plaintiff's Complaint.

(Doc. No. 38).[1]  In Count I of her complaint, Plaintiff alleges that Defendants violated her Fourth

Amendment rights by using excessive physical force in an arrest of the Plaintiff on January 4,

2003.  In Count II,  Plaintiff alleges that her arrest was unlawful under the Fourth Amendment.

Plaintiff also brings suit for malicious prosecution under 42 U.S.C. § 1983 (2005) (Count III), and

for assault, battery, false imprisonment, false arrest, and malicious prosecution under New Mexico

law (Count V).

Defendants argue that they are entitled to qualified immunity under 42 U.S.C. § 1983 and

are immune from suit under the New Mexico Tort Claims Act.  Defendants further claim that

there are no genuine issues of material fact, and that they are entitled to judgment as a matter of

---

[1]        Count IV of Plaintiff's complaint was a claim against the City of Albuquerque, and
it was dismissed per the parties' Stipulation of Dismissal on July 29, 2005. (Doc. No. 40).

law under FED. R. CIV. P. 56.

Having considered the arguments of counsel and the evidence, the Court determines that Defendants' motion for summary judgment should be granted as to Counts II and III, denied as to Count I, and granted, in part, as to Count V of Plaintiff's complaint.

## I.    *Factual Background*

Viewing the evidence in the light most favorable to Plaintiff, the Court finds the following factual background.  At 10:30 p.m. on January 4, 2003, Plaintiff was loudly arguing with her ex-boyfriend, Don Kirkpatrick, outside the entrance gate to the Veteran's Administration Medical Research Center ("VA Center") in southeast Albuquerque, New Mexico.  Mr. Kirkpatrick worked as a security guard with Wackenhut Security at the VA Center, and he was scheduled to begin his shift at 11:00 p.m.  Mr. Kirkpatrick had walked to his shift at the VA Center, and Plaintiff had followed Mr. Kirkpatrick in her vehicle.  Plaintiff had consumed alcohol earlier in the evening, and was wearing a black jacket with the word "Security" printed on the back.  During their argument, Mr. Kirkpatrick threw Plaintiff's car keys over the VA Center gate because he felt Plaintiff was too intoxicated to drive.

Wackenhut Security Officer Ethan Carr observed Plaintiff and Mr. Kirkpatrick arguing outside the VA Center gate and called the police.  The Albuquerque Police Department dispatched Defendants Officer Kenny and Officer McDonald to the VA Center to investigate.  Both Defendants made contact with Plaintiff and Mr. Kirkpatrick.  Plaintiff continued to loudly argue with Mr. Kirkpatrick while the Defendants were on the scene.  Mr. Kirkpatrick was concerned about his employment and wanted Plaintiff to leave the VA Center.  Defendants also believed Plaintiff was intoxicated.

2

Defendants told Plaintiff to leave the scene and walk home.  However, Defendants gave Plaintiff permission to obtain some items from her vehicle before she left the area.  Plaintiff walked back and forth to her vehicle several times attempting to gather items.  After several minutes, Plaintiff began walking west to leave, however, she then turned around and took a few steps in the Defendants' direction.  At this point the Defendants placed Plaintiff under arrest for refusing to obey a lawful order from a police officer.

Defendants did not warn Plaintiff that she would be placed under arrest if she did not immediately leave the area.   Instead, as Plaintiff was preparing to leave the area, Defendant McDonald suddenly said, "I'm giving you until three to walk away," and then quickly counted down, "three, two, one," before placing her in handcuffs.  Defendant McDonald grabbed Plaintiff's left arm, and Defendant Kenny grabbed Plaintiff's right arm, and both Defendants brought her hands toward her back to handcuff Plaintiff.

Defendants used such force in handcuffing her as to break her left arm.  Plaintiff  informed the Defendants that they had broken her arm and requested medical assistance.   However, her requests were ignored.  Defendant McDonald was "annoyed" with Plaintiff at this time. Defendant McDonald was also verbally abusive to her, calling her "a pain" and "a peon."

Defendant McDonald then transported Plaintiff to the Bernalillo County Detention Center ("BCDC").  Medical personnel at BCDC examined Plaintiff and informed Defendant McDonald that Plaintiff could not be booked because of her medical condition.  Defendant McDonald offered to take Plaintiff to the hospital.  However, Plaintiff refused because she was afraid of Defendant McDonald.

When no other Albuquerque Police Department Officers were willing to take her to the

hospital, Plaintiff left BCDC.  Plaintiff then flagged down a vehicle passing by, borrowed the

owner's cell phone, and called an ambulance for herself.  It was later determined that Plaintiff's

left ulna and radius were broken and required surgery.

Defendant McDonald filed a criminal complaint against Plaintiff on January 5, 2003,

charging her with Resisting, Obstructing or Refusing to Obey an Officer in accordance with

Albuquerque, N.M., Am.Ord.§ 12-2-19.  Defendant Kenny agreed with this charge.  The charge

was dismissed by the Bernalillo County Metropolitan Court on April 1, 2003.[2]

### III.     Discussion

#### a.     Standard of Review

Under FED. R. CIV. P. 56, a grant of summary judgment is appropriate when there are no

genuine issues as to any material fact and the moving party is entitled to judgment as a matter of

law.  An issue of material fact is genuine if a reasonable jury could return a verdict for the

non-movant.  *Kaul v. Stephan*, 83 F.3d 1208, 1212 (10th Cir. 1996).  In evaluating whether

summary judgment is appropriate, the Court views the evidence in the light most favorable to the

non-movant.  *Lawmaster v. Ward*, 125 F.3d 1341, 1346 (10th Cir. 1997).

Qualified immunity serves to protect government officers from having to defend

themselves against baseless lawsuits.  *Pueblo Neighborhood Health Centers v. Losavio*, 847 F.2d

642, 645 (10th Cir. 1988).  When a defendant raises a qualified immunity defense in the summary

judgment context, a heavy two-part burden must be overcome by the plaintiff.  *Romero v. Fay*, 45

F.3d 1472, 1475 (10th Cir. 1995).  First, the plaintiff must establish that the defendant violated

---

[2]      The Bernalillo County Metropolitan Court record lists the reason for dismissal of
the charge against Plaintiff as "Officer FTA."  (Doc. No. 41, Plaintiff's Ex. 8).

one of her constitutional or statutory rights.  *Saucier v. Katz*, 533 U.S. 194, 201 (2001); *Medina v. Cram*, 252 F.3d 1124, 1128 (10th Cir. 2001); *Nelson v. McMullen*, 207 F.3d 1202, 1206 (10th Cir. 2000).  Second, Plaintiff must show that the right was "clearly established" when the alleged violation occurred.  *Nelson*, 207 F.3d at 1206.  A right is "clearly established" if a reasonable official in the defendant's position would have known his conduct violated that right.  *Siegert v Gilley*, 500 U.S. 226, 231 (1991); *Anderson v. Creighton*, 483 U.S. 635, 640 (1987); *Albright v. Rodriguez*, 51 F.3d 1531, 1535 (10th Cir. 1995).  In order to find that the law was clearly established at the time of the alleged violation, ordinarily there must be a Supreme Court or Tenth Circuit decision on point.  *Salehpoor v. Shahinpoor*, 358 F.3d 782, 785 (10th Cir. 2004); *Medina v. City and County of Denver*, 960 F.2d 1493, 1498 (10th Cir. 1992). However, the requirement that the law be clearly established requires "some, but not necessarily precise, factual correspondence" between the cases predating the alleged violation and the facts in question. *Calhoun v. Gaines*, 982 F.2d 1470, 1475 (10th Cir. 1992).

Therefore, in order to overcome the defense of qualified immunity, Plaintiff must show that Defendants' actions violated her constitutional rights, and that unlawfulness of Defendants' actions was apparent in light of pre-existing law.  *Anderson*, 483 U.S. at 639-40.  If Plaintiff demonstrates a violation of a clearly established constitutional right, the burden shifts to Defendants to establish that there are no genuine issues of material fact and that Defendants are entitled to judgment as a matter of law.  *Gross v. Pirtle*, 245 F.3d 1151, 1156 (10th Cir. 2001); *Nelson*, 207 F.3d at 1206.

   b.      *Count I - Use of Excessive Force in Violation of the Fourth Amendment*

Plaintiff alleges in Count I that Defendants violated her Fourth Amendment rights by using

5

excessive force in arresting her on January 4, 2003.  Excessive force claims are analyzed under the

"objective reasonableness" standard of the Fourth Amendment.  *Graham v. Connor*, 490 U.S.

386, 396-97 (1989).  In evaluating an excessive force claim, the Court must consider the totality

of the circumstances.  *Sevier v. City of Lawrence*, 60 F.3d 695, 699 (10th Cir. 1995).  The Court

views the evidence from the perspective of a reasonable officer on the scene.  *Graham*, 490 U.S.

at 396.  Allowance must be made "for the fact that police officers are often forced to make

split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving—about

the amount of force that is necessary in a particular situation."  *Id.* at 397.  *See also Cram*, 252

F.3d at 1131.  The Court must carefully balance the intrusion on the plaintiff's Fourth Amendment

rights against the countervailing governmental interests.  *Graham,* 490 U.S. at 396; *Phillips v.*

*James*, 422 F.3d 1075 (10th Cir. 2005).  Among the factors to consider are: (1) the severity of the

crime at issue, (2) whether the suspect poses an immediate threat to the safety of the officers or

others, and (3) whether the suspect is actively resisting arrest or attempting to evade arrest by

flight.  *Graham*, 490 U.S. at 396.

Plaintiff has established a violation of her Fourth Amendment rights.  Plaintiff produced

evidence that Defendants used so much force that they broke her left arm when they arrested and

handcuffed her for refusing to obey the order to leave.  In her deposition, Plaintiff described the

incident:

> It happened so quickly.  When he had grabbed me from my left
> wrist, or my hand, it was a powerful pull, a jerk back, you know,
> behind my back . . . it was just like [my arm was] lifted up and
> immediately forced into the handcuffs at that point . . . He used
> very strong force on me to pull my arm . . . He was very rough with
> me at that point . . . I am not a very big person, so he really didn't
> need to use that much force, but to put me in that much pain he did.

6

(Plaintiff's Ex. 3, Depo. of Joann Ruiz, pgs. 110-13).  Plaintiff also submitted medical documents

describing the extent of her injury.  A reasonable police officer in Defendants' situation would not

have believed that force sufficient to break Plaintiff's arm was needed in order to effect her arrest.

Plaintiff posed no flight risk, and did not resist arrest.  The severity of Plaintiff's alleged crime was

minimal:  violation of a municipal ordinance is categorized as a petty misdemeanor in New

Mexico.  *State v. Luna*, 93 N.M. 773, 777, 606 P.2d 183, 187 (1980); N.M. Stat. Ann. §§ 3-17-1

& 30-1-6(C) (2005).  The penalty for violating Albuquerque, N.M., Am. Ord. § 12-2-19 is a fine

not exceeding $ 500, imprisonment not exceeding 90 days, or both.   N.M. Stat. Ann. §§ 3-17-1

& 30-1-6(C); Albuquerque, N.M., Am.Ord. § 1-1-99 (2005).   Furthermore, Plaintiff did not pose

an immediate threat to the safety of the officers or others.  Although Plaintiff was belligerent,

appeared to be intoxicated, and was wearing a jacket with the word "Security" written on the

back, Defendants allowed Plaintiff to retrieve items from her vehicle before leaving the area.

Defendant McDonald did not accompany Plaintiff to her vehicle on these trips.  In fact, Defendant

McDonald stated that only after he decided to arrest the Plaintiff did it occur to the officers that

Plaintiff might present a threat to their safety.  (Plaintiff's Ex. 2, Depo. of Joshua McDonald, pgs

30-32).

     A police officer is entitled to use a reasonable amount of force in making arrest.  *Graham*,

490 U. S. at 396; *Gross*, 245 F. 3d at 1158.  However, considering the totality of the

circumstances, the Court concludes that Plaintiff has offered sufficient admissible evidence to

demonstrate a violation of her Fourth Amendment right to be free from excessive use of force

when Defendants roughly jerked her arm to handcuff her.

Plaintiff has also demonstrated that her Fourth Amendment rights were "clearly established."  Plaintiff presented very little flight or safety risk, and was only being arrested for failure to obey an order to leave the area.  A reasonable officer would have understood that roughly grabbing the Plaintiff and breaking her arm would have been unlawful in this situation.  *See Olsen v. Layton Hills Mall*, 312 F.3d 1304, 1312 (10th Cir. 2002) (summary judgment on an excessive force claim was precluded by disputed evidence that an officer "cocked [a plaintiff's] arm at an angle . . . clear up the middle of his back even though he complied physically at all times with the officer during the arrest").  Plaintiff has therefore established that her Fourth Amendment rights were clearly established at the time.  Thus, Defendants are not entitled to qualified immunity on Count I of Plaintiff's complaint.

The burden now shifts to Defendants to establish that there are no genuine issues of material fact and that they are entitled to judgment as a matter of law.  Defendants have not shown that they are entitled to summary judgment because there are genuine issues of material fact as to Plaintiff's Fourth Amendment excessive force claim.  In particular, the evidence regarding the amount of force Defendants used to handcuff Plaintiff is in conflict.  Plaintiff testified that Defendants roughly jerked her hand behind her back, fracturing her forearm in the process.  Defendants point to the surveillance tape of the incident (Defendant's Ex. H) and state that the Defendants simply placed Plaintiff's hands behind her back in a routine manner.

However, the Court finds the surveillance tape recording of Plaintiff's arrest to be inconclusive.  The videotape does not clearly show how much force was used by the Defendants during Plaintiff's arrest.  Because the amount of force used by Defendants is factually in dispute and is material to the determination of the objective reasonableness of Defendants' actions,

summary judgment is inappropriate as to Count I..  *See, e.g., Graham*, 490 U.S. at 396-97.

        c.        *Count II - Unlawful Arrest in Violation of the Fourth Amendment*

In Count II Plaintiff alleges that Defendants unlawfully detained and arrested her on January 4, 2003.  Claims of unlawful warrantless arrest are analyzed under the probable cause standard.  *Romero*, 45 F.3d at 1476.  A police officer may arrest an individual without a warrant if he has probable cause to believe that the person committed or is in the process of committing a crime.  *Tennessee v. Garner*, 471 U.S. 1 (1985).  Probable cause to arrest exists "if facts and circumstances within the arresting officer's knowledge and of which he or she has reasonably trustworthy information are sufficient to lead a prudent person to believe that the arrestee has committed or is committing an offense."  *Jones v. City and County of Denver*, 854 F.2d 1206, 1208-10 (10th Cir. 1988).  In the qualified immunity context, a defendant is "entitled to immunity if a reasonable officer could have believed that probable cause existed to arrest" the plaintiff.  *Hunter v. Bryant*, 502 U.S. 224, 596 (1991).  Furthermore, "even law enforcement officials who 'reasonably but mistakenly conclude that probable cause is present' are entitled to immunity."  *Hunter,* 502 U.S. at 596 (quoting *Anderson*, 483 U.S. at 641).

Plaintiff was arrested for refusing to obey Defendants' order to leave the area surrounding the VA Center gate.  An Albuquerque, New Mexico municipal ordinance prohibits "refusing to obey or comply with any lawful process or order given by any police officer acting in the lawful discharge of his duties."  Albuquerque, N.M., Am. Ord. § 12-2-19(C).  As stated above, New Mexico law categorizes violation of a municipal order as a petty misdemeanor.  *State v. Luna*, 606 P.2d 183, 187 (N.M. 1980); N.M. Stat. Ann.§§ 3-17-1 & 30-1-6(C).

Considering the evidence in the light most favorable to Plaintiff, the Court is unable to find

that Plaintiff has established a violation of a clearly established right in Count II.  When Defendants arrived outside the VA Center, Defendants ordered Plaintiff to leave the scene. Defendants gave Plaintiff permission to obtain items from her vehicle before leaving the scene. After Plaintiff gathered the items, she began walking away down the street.  However, Plaintiff then turned and took several steps toward the Defendants.  Defendants then arrested the Plaintiff. A reasonable police officer would have believed that Plaintiff was refusing to obey Defendants' order to leave the area when she turned around and started walking back towards the Defendants.

Plaintiff does not dispute that she walked towards the Defendants, and she acknowledges that she knew she had to leave the scene.  Plaintiff disputes, however, that her actions constituted refusal to leave.  However, probable cause is evaluated from the perspective of an objectively reasonable police officer, and not in accordance with the subjective belief of the plaintiff.  *Jones v. City and County of Denver*, 854 F.2d at 1208.  Although Plaintiff may not have subjectively believed she was refusing to obey Defendants' order, a reasonable police officer with Defendants' knowledge would have probable cause to believe Plaintiff refused to leave the scene.

Furthermore, the fact that Defendants failed to warn Plaintiff that she would be arrested does not render the arrest unlawful.  *Kladis v. Brezek*, 823 F.2d 1014, 1018 (7th Cir. 1987) (cited with approval by *Rudd v. Graves*, 22 Fed. Appx. 954, 955 (10th Cir. 2001) (unpublished opinion)).  Defendants ordered Plaintiff to leave the area several minutes before arresting her, and Plaintiff did not leave the area.  Defendants therefore had probable cause to arrest Plaintiff, and Plaintiff has failed to establish a violation of her Fourth Amendment rights.

Finally, Plaintiff argues that an order to leave the area, on foot and at night, was not "lawful" under Albuquerque, N.M, Am. Ord. § 12-2-19(C).  However, Plaintiff has cited no

authority to support her contention that the order to leave was not "lawful."  There is also no evidence in the record that shows that Defendants knew or should have known that their order for Plaintiff to leave was not "lawful."

Even if Defendants' order to leave the area was not "lawful," Defendants may still be entitled to qualified immunity.  Defendants are entitled to qualified immunity even if they are reasonably mistaken as to the existence of probable cause.  *Hunter,* 502 U.S. at 596.  Plaintiff has not shown that a reasonable person in the Defendants' position would have known that arresting Plaintiff for refusing to obey the order to leave would violate Plaintiff's Fourth Amendment rights.  *Anderson*, 483 U.S. at 640.  Plaintiff thus has failed to establish that Defendants violated a clearly established right, and Defendants are entitled to qualified immunity on Count II.

   *d.*  *Count III - Malicious Prosecution in Violation of the Fourth Amendment*

Plaintiff alleges in Count III that Defendants maliciously prosecuted Plaintiff in violation of the Fourth Amendment.  In order to overcome Defendants' assertion of qualified immunity for Count III, Plaintiff must first establish that Defendants maliciously prosecuted her in violation of her Fourth Amendment rights.  Plaintiff must then show that a reasonable person in Defendants' position would have known that he was violating Plaintiff's rights.  *Anderson*, 483 U.S. at 640.

Malicious prosecution claims brought under 42 U.S.C. § 1983 are evaluated by referring to the common law elements of malicious prosecution torts under state law.  *Taylor v. Meacham,* 82 F.3d 1556, 1561 (10th Cir. 1996), *cert. denied*, 519 U.S. 871 (1996).  However, the court should consider general principles of tort law rather than the law of the jurisdiction where the cause of action originated.  *Pierce v. Gilchrist,* 359 F.3d 1279, 1288 (10th Cir. 2004).  The ultimate issue is whether the plaintiff has alleged a constitutional violation.  *Id.* at 1289.

Therefore, the Court will rely on general principles of malicious prosecution as discussed in *Pierce v. Gilchrist*, rather than on the New Mexico tort of malicious abuse of process, in determining whether Plaintiff has established a constitutional violation. *Pierce*, 359 F.3d at 1291-98.

An essential element of Plaintiff's § 1983 malicious prosecution claim is the lack of probable cause to support the original arrest or prosecution. *Pierce*, 359 F.3d at 1294; *Wolford v. Lasater*, 78 F.3d 484, 489 (10th Cir. 1996). In *Pierce,* the Court of Appeals for the Tenth Circuit stated "[t]he probable cause requirement is central to the common law tort, because not every arrest, prosecution, confinement, or conviction that turns out to have involved an innocent person should be actionable." *Pierce*, 359 F.3d at 1294. As discussed above, Defendants had probable cause to believe that Plaintiff was refusing to obey their order to leave the area. Plaintiff therefore cannot demonstrate that Defendants violated her constitutional rights. Because Plaintiff is unable to establish that Defendants maliciously prosecuted her in violation of her Fourth Amendment rights, Defendants are entitled to qualified immunity on Count III.

> e.    *Count V - State Tort Claims*

In Count V Plaintiff seeks damages under state tort law, alleging that Defendants "intentionally, recklessly, and/or negligently assaulted, battered, falsely imprisoned, falsely arrested, and maliciously prosecuted Plaintiff . . . while acting within the scope of their duties as law enforcement officers." (Doc. No. 1). Defendants first argue that they are entitled to immunity from these claims under the New Mexico Tort Claims Act ("NMTCA"). N.M. Stat. Ann. §§ 41-4-1 et. seq. The NMTCA grants immunity from liability for any tort committed by "any governmental entity and any public employee while acting within the scope of duty," except

where explicitly waived.  N.M. Stat. Ann. § 41-4-4(A).  However, section 41-4-12 of the

NMTCA waives immunity "for liability for personal injury, [and] bodily injury . . . resulting from

assault, battery, false imprisonment, false arrest, malicious prosecution, [and] abuse of process . . .

caused by law enforcement officers while acting within the scope of their duties."  *See also Davis

v. Board of County Comm'rs*, 127 N.M. 785, 796, 987 P.2d 1172, 1183 (1999).  Plaintiff's state

tort claims therefore fall within a waiver of immunity and Defendants are not immune from suit

under the NMTCA.

     Although they are not entitled to immunity, Defendants may assert any defenses they may

have under New Mexico law.  N.M. Stat. Ann. § 41-4-14.  Defendants next argue that they are

not liable because their actions were lawful, done in good faith, and based on probable cause.

     Plaintiff's first two state tort claims are for assault and battery.  Under New Mexico law,

an assault is defined as any unlawful act, threat, or menacing conduct which causes a plaintiff to

reasonably believe that she is in danger of receiving an immediate battery.  *Baca v. Velez*, 114

N.M. 13, 15, 833 P.2d 1194, 1196 (Ct. App. 1992); N.M. Stat. Ann. § 30-3-1(B).  A battery is an

unlawful, intentional touching or application of force to the person of another done in a rude,

insolent or angry manner.  N.M. Stat. Ann. § 30-3-4.  The New Mexico Supreme Court has

determined that police officers are entitled to use a reasonable amount of force when necessary to

effect an arrest for a misdemeanor.  *Mead v. O'Connor*, 66 N.M. 170, 173, 344 P.2d 478, 479-

480 (1959).  However, as discussed above, there are genuine issues of material fact in regard to

the amount of force Defendants used in arresting Plaintiff.  The Court therefore concludes that

Defendants are not entitled to summary judgment on Plaintiff's state tort claims for assault and

battery.

Defendants are entitled to summary judgment on Plaintiff's state law claim for false arrest. New Mexico law allows a police officer to make a warrantless arrest for a misdemeanor as long as the officer has probable cause to believe the offense has occurred in his presence. *Tanberg v. Sholtis*, 401 F.3d 1151, 1157 (10th Cir. 2004); *Luna*, 93 N.M. at 777.   Probable cause to believe an offense has occurred in an officer's presence is established "when the facts and circumstances as observed by the officer through the officer's senses are sufficient to warrant an officer of reasonable caution to believe that an offense is occurring." *State v. Salas*, 127 N.M. 686, 690, 986 P.2d 482, 486 (Ct. App. 1999), *cert. denied*, 128 N.M. 149, 990 P.2d 823 (1999).   In this case, Defendants observed Plaintiff walking towards them after they had ordered her to leave. Defendants therefore had probable cause to believe that a misdemeanor was being committed in their presence, and could lawfully arrest Plaintiff under New Mexico law.

Similarly, Defendants are entitled to summary judgment on Plaintiff's claim of false imprisonment because of the existence of probable cause to detain her.  *See Stienbaugh v. Payless Drug Store, Inc.*, 75 N.M. 118, 120-122, 401 P.2d 104, 105-107 (1965); *Romero v. Sanchez*, 119 N.M. 690, 895 P.2d 212, 215 (1995).   In New Mexico, good faith and probable cause is a defense to a claim of false imprisonment.  *See, e.g., Perea v. Stout*, 94 N.M. 595, 600-601, 613 P.2d 1034, 1040 (Ct. App. 1980), *cert. denied*, 449 U.S. 1035 (1980).

Finally, Defendants are entitled to summary judgment on Plaintiff's state law malicious prosecution claim.  In New Mexico, the torts of malicious prosecution and abuse of process have been combined into a single tort known as malicious abuse of process.  *DeVaney v. Thriftway Marketing Corp.*, 124 N.M. 512, 518, 953 P.2d 277, 283 (1997), *cert. denied,* 524 U.S. 915 (1998).  Under New Mexico law, the elements of malicious abuse of process consist of: "(1) the

14

initiation of judicial proceedings against the plaintiff by the defendant; (2) an act by the defendant

in the use of process other than such as would be proper in the regular prosecution of the claim;

(3) a primary motive by the defendant in misusing the process to accomplish an illegitimate end;

and (4) damages." *Id.*  The second essential element of the tort is a misuse of process, which is

established by showing either a lack of probable cause or an improper use of criminal or civil

process in a manner not contemplated by law.  *Weststar Mortgage Co. v. Jackson*, 133 N.M. 114,

122, 61 P.3d 823, 831 (2002).  Plaintiff has not presented any evidence of improper use of

process, and, as discussed above, Defendants had probable cause to believe that Plaintiff had

committed the misdemeanor of refusing to obey.  Hence, Plaintiff has not satisfied the second

element of her malicious abuse of process claim under New Mexico law.


   IT IS THEREFORE ORDERED THAT:

     1. Defendants' Motion for Summary Judgment Requesting Dismissal of

Count I of Plaintiff's Complaint is DENIED.


     2. Defendants' Motion for Summary Judgment Requesting Dismissal of

Count II of Plaintiff's Complaint is GRANTED.


     3. Defendants' Motion for Summary Judgment Requesting Dismissal of

Count III of Plaintiff's Complaint is GRANTED.


     4. Defendants' Motion for Summary Judgment Requesting Dismissal of

Count V of Plaintiff's Complaint is GRANTED, in part, as to Plaintiff's state law claims for false arrest, false imprisonment, and malicious prosecution.


5.      Defendants' Motion for Summary Judgment Requesting Dismissal of Count V of Plaintiff's Complaint is DENIED, in part, as to Plaintiff's claims for assault and battery.


A separate Partial Summary Judgment will be entered contemporaneously with this Memorandum Opinion and Order.


_____
SENIOR UNITED STATES DISTRICT JUDGE